## Supreme Court—General Term—Fifth Department

### *January*, 1887.

## PEOPLE v. HOLFELDER,

### EVIDENCE—ADMISSION BY SILENCE.

A witness for the defense who testified only that at a certain time she was with one S., another witness, and saw him leave her and go toward defendant's house, was asked by the prosecution on cross-examination whether she had not made certain specified statements to two officers relating to the subsequent movements of defendants after the time mentioned. She denied having made such statements. *Held*, that as to the statements the testimony was new matter brought out by the prosecution, and that the prosecution could not contradict the witness in regard thereto.

The silence of a defendant when he should have spoken cannot be taken to be an admission unless it is proved that he heard the statement which he should have denied.

The question whether a person heard a certain statement cannot be determined by the opinion of witnesses.

There being conflicting evidence as to whether defendant heard certain declarations, the court said to the jury: " My recollection is that " the other officer " was very positive that the defendant heard these declarations, but this is a question for you whether he did or not." In fact, no other officer had so testified. *Held*, error calling for reversal.

APPEAL by Joseph Holfelder, defendant, from a judgment of the Court of Sessions of Erie county, of 10th March, 1886, convicting him of robbery in the second degree.

The facts appear in the opinion.

*Tracy C. Becker*, for defendant appellant.

It was an error for the court to allow the district attorney to ask the witness Nicken on his direct examination the question as to what the mother of the defendant said to Nicken

and the other officers as to the time the defendant came into her house.

In *Lanergan* v. *People*, 39 N. Y. 34, it was held that the conversation between the witness and the wife of the accused, although in the presence of the defendant, was not admissible, it appearing at the time that the defendant was in a drunken stupor.

In *McCusker* v. *Carlson*, 20 W. Dig. 424, opinion by HAIGHT, Judge, January term, 1885, the general term of the supreme court held that the true reason and basis for allowing conversation between the third party and the witness, in the presence of the defendant, to be given in evidence, was that hearing the conversation and *not denying* the statement made was some evidence to go to the jury as to the truth of the statement made.

*Edward W. Hatch*, district attorney, for the people, respondents.

No error was committed in allowing the witness Nicken to testify to the conversation had with the mother of the defendant as to the time when the defendant reached home. This evidence was admitted upon the theory that it was an admission upon the part of defendant as to the time when he arrived home. His mother was asked what time he came in, and stated this conversation was had in a loud tone. The defendant was within ten feet of the parties, and the officer stated that he must have heard it. There is no pretense but that at the time he was in full possession of all his faculties. Under such circumstances it is clear that the evidence was properly received. *Lanergan* v. *People*, 39 N. Y. 39, 41, 42.

In the above case Judge DWIGHT very clearly points out when such conversations are admissible, and states what must be shown. An examination of this case shows that the rule there laid down was complied with. *People* v. *Burns*, 2 N. Y. Crim. Rep. 415, 424, 425.

SMITH, P. J.—Testimony was given on the part of the prosecution tending to show that the offense alleged in the in-

dictment was committed in the city of Buffalo, between the hours of half past one o'clock and three o'clock in the morning of December 18th, 1884, on Broadway near the corner of Madison street. The complainant, Fleisner, had visited a saloon kept by one Kick, a little after midnight, remaining there till about half past one, and the defendant was shown to have been in the saloon, and to have left it shortly after Fleisner entered it. Evidence having been given on the part of the prosecution tending to connect the defendant with the commission of the offense, the defendant attempted to rebut it by testimony tending to show that he reached his residence on Adams street and went to bed shortly before one o'clock.

Katie Ushold, a witness called by him, testified that she lived eight doors from Holfelder's house, and that on the night in question a friend named Shuler had been out with her and left her at her gate at half past twelve A. M., and went towards Holfelder's house. This testimony was important only as it corroborated Shuler the next witness who testified that he parted with Katie Ushold at her house between half past twelve and one o'clock, as he judged ; passed Holfelder's house, saw Holfelder going into his gate, and spoke to him. Katie Ushold on her cross-examination stated that she had talked with officers Nicken and Fernlacker and did not tell them or either of them that she saw Holfelder going to his house, go into the yard, go out of the yard, go down Beckwith street about one o'clock and return in about half an hour and run into the alley, and that she got into her own house at two o'clock and looked at the clock.

After the defendant rested the prosecution called upon officer Fernlacker and put to him the following question : " Did she," Katie Ushold, " tell you she saw Holfelder run into his yard about half past twelve, or one o'clock, that she saw him go out and go down Beckwith street, and in about three quarters of an hour she saw him run back into the alley ? " The question was objected to on the ground, among others that in respect to the matter to which it related the prosecution made Katie Ushold their own witness and they could not

contradict her. The objection was overruled and the defendant's counsel excepted. The witness answered, "she did not say that time, she said near one o'clock." We understand this to be an affirmative answer to the question, substituting "near one o'clock" for "about half past twelve or one o'clock," and the reception of it we think was error.

The only material part which the defense proved or sought to prove by the witness Katie Ushold, was the hour at which Shuler left her and its only materiality consisted in the circumstance that it tended, in connection with the testimony of Shuler, to fix the time when the latter saw the defendant going into his gate. Her cross-examination as to what she had stated in regard to Holfelder's subsequent movements was new matter, in regard to which the prosecution made her their own witness, and it was not competent for them to contradict her. It was undoubtedly competent for them to give evidence tending to show as they did by the witness Nicken that she made a contradictory statement as to the hour when Shuler left her at her house, but beyond that the proof of her statements was improperly received. (*People* v. *Cox*, 21 Hun, 47; affirmed, 83 N. Y., 610.)

The prosecuting attorney was permitted to prove against the objection and exception of the defendant a conversation had by officer Nicken with the defendant's mother at the house of the latter about three o'clock on the morning in question. The witness testified in substance that the mother said her son got home at two o'clock; that she knew that was the hour because she got out of bed and looked; that her son had promised her that he would be at home at twelve o'clock and go to church in the morning, and that she had given him a talking to for coming home so late. The testimony was received upon the theory, doubtless, that the son heard what his mother said, and by his silence impliedly admitted it to be true. It is questionable, in view of the testimony, whether the defendant heard what his mother said to the officer. Nicken testified that the defendant was in a room adjoining that in which the conversation was heard, eight or ten feet

away as the witness judged, engaged in dressing himself. The door was open; the witness testified that he spoke in a pretty loud tone, but it did not appear in what tone the mother spoke. The witness in a reply to a question put by the court as to whether he thought the defendant heard the talk, replied that he thought he did; but in reply to a question put by the defendant's counsel said he would not swear that the defendant heard it. The testimony respecting the conversation with the mother seems to have had decided weight with the jury.

After they had deliberated several hours they sent a written communication to the judge requiring what bearing the testimony of Nicken should have in regard to what Mrs. Holfelder said to him about the time when her son came home. In reply, the court instructed the jury that if the defendant did not hear what was said the testimony was unimportant; but if he did hear it, it would bear upon the question of his guilt or innocence, "because," said the court, "if he heard his mother state to the officer that it was two o'clock when he got in, and he made no denial of it, it might be taken as an admission on his part that what his mother said was true."

The correctness of that instruction in the abstract is not questioned. But two comments are to be made upon it, in view of the facts of this case.

In the first place there is no evidence whatever, that if the defendant heard the statement, he made no denial of it or was silent. It does not appear how he received it. In the next place the case shows that after the instruction above stated, was given the counsel differed in open court as to the testimony of Nicken, and the court then told the jury that they must determine the evidence for themselves and he made the following remark: "The evidence of the other officer who swore upon that was—my recollection is that he was very positive that the defendant heard these declarations; but this is a question for you whether he did or not." So far as the case shows (and it purports to contain all the evidence) the remark respecting the testimony of any officer other than Nicken was inadvertently made. The only officers who were at the

house with Nicken were Hammersmith and Christbaum. Christbaum testified that he did not go inside of the house and did not know what happened there. In regard to Hammersmith, the case does not give his testimony in detail and states nothing more on this subject than that he gave further testimony tending to corroborate Nicken as to what occurred at the defendant's house. It does not appear that his testimony was any more positive than that of Nicken who said that he thought the defendant heard what was said, or that he testified to any fact on which such opinion could be based, in addition to the facts stated by Nicken. The remark in question was therefore unwarranted by the testimony and it probably had weight with the jury upon what they seem to have regarded as the turning point in the case. Indeed, it is not too much to say in view of what occurred after the jury first retired, that the verdict was produced by the remark of the judge above referred to, and the opinion expressed by the witness Nicken that the defendant heard the conversation with his mother. The opinion, we think, was not proper evidence. The question whether the defendant heard was not one to be determined by the testimony of experts, (*Manke* v. *People*, 17 Hun, 410; S. C., affirmed, 78 N. Y. 611). Although no exception was taken to this item of testimony or to the remark of the court above referred to, yet as it is impossible to say that they did not produce the verdict, we think it a case where justice requires a new trial. (Code of Civ. Pro., § 527, as amended by Ch. 360, L. 1882.)

The conviction should be reversed and a new trial ordered in the Court of Sessions of Erie County, to which court the proceedings should be remitted.

BARKER, HAIGHT and BRADLEY, JJ., concur.

NOTE.—Defendant's silence can be used against him if it was his duty to speak. *People* v. *Meyers*, 5 N. Y. Crim. 120; *Wright* v. *People*, 1 N. Y. Crim. 462. This rule does not apply to accusations made in judicial proceedings. *People* v. *Willett*, 1 N. Y. Crim. 355.